**CEDAR RAPIDS HUMAN RIGHTS
COMMISSION, Appellant,**

v.

**CEDAR RAPIDS COMMUNITY SCHOOL
DISTRICT, IN the COUNTY OF
LINN, State of Iowa, Appellee.**

No. 56066.

Supreme Court of Iowa.

Oct. 16, 1974.

David F. McGuire, Cedar Rapids, for appellant.

James R. Snyder and John R. Carpenter of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

MASON, Justice.

This appeal by the Cedar Rapids Human Rights Commission, hereafter referred to as the Commission, arises out of a controversy involving alleged sex discrimination against two school teachers employed by the Cedar Rapids Community School District, hereafter referred to as the School District. The Commission had commenced an action in the Linn District Court against the School District to enforce certain orders made by the Commission following a hearing on complaints against the School District.

Following hearing the district court dismissed the matter on the grounds the Commission acted as a court, judicial review of the Commission's ruling had not been provided and the Commission's orders against the School District were not enforceable since the Commission had exceeded its constitutional jurisdiction.

The Cedar Rapids Human Rights Commission was established by Cedar Rapids City Ordinance No. 54–70 which amended ordinance No. 104–69, ch. 69, of the Municipal Code. Chapter 69 establishes the Commission, enumerates its powers, defines and sets out unfair practices in public accommodations and services, unfair employment and housing practices and provides the procedure for redress of aggrievances. The person claiming to be aggrieved by a discriminatory act or practice may file a complaint with the Commission; an investigation is then conducted by the Commission to

determine if there is probable cause for the complaint. If probable cause is found conciliation is attempted; if conciliation fails a public hearing may be brought. At the hearing the party or parties charged have the right to file written answer to the complaint, to call witnesses on their behalf and cross-examine other witnesses. The city attorney or representative, or an agent of the Commission conducts the case on behalf of the Commission. Evidence is taken under oath, strict rules of evidence applicable in courts of law or equity do not apply and complainant has the burden of proving the allegations of the complaint.

Finally, section 69.15 provides in part:

"REMEDY. If upon consideration of the evidence taken at a public hearing, the Commission shall be of the opinion that any person charged in the complaint has engaged in or is engaged in, the unfair or discriminatory act or practice complained of, then the Commission shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from the unfair or discriminatory act or practice, and to take such affirmative action as is required to remedy the unfair or discriminatory act or practice complained of, including, but not limited to, hiring, reinstatement, or upgrading of employees, with or without back pay, * * *."

Section 69.16 provides:

"SUIT. The Commission may, within 2 years after the entry of any order under this ordinance, direct the City Attorney or his representative to bring a suit in the District Court of this county, or in any other court which may have jurisdiction over the party charged, for an injunction or other appropriate court order of judgment, to compel obedience to its order."

April 1972 Mrs. Joan Parr and Mrs. Judy McCarthy filed complaints with the Commission alleging sex discrimination in employment by their employer, the School District. The alleged discrimination involved forced maternity leave for pregnant teachers.

After investigation the Commission found probable cause for the complaints and provided for conciliation. When conciliation failed a public hearing was held and testimony taken. The Commission found the School District did discriminate in the area of sex and employment against the two complainants. They issued the following "directives":

"The Commission directs in the case of Mrs. Judy McCarthy, that she shall receive compensation for time lost as a result of the forced maternity leave.

"The Commission directs in the case of Mrs. Joan Parr:

"(1) that Mrs. Parr shall receive a maternity leave,

"(2) that Mrs. Parr shall be offered a contract at the conclusion of her maternity leave, and

"(3) that Mrs. Parr shall receive compensation for time lost as a result of forced resignation."

The School District was also "directed" to pay all costs incurred by the Commission resulting from the public hearing.

After the School District failed to comply with the directives, the Commission filed a petition October 16 asking that the district court order the School District to comply.

The School District, in resistance to the petition, filed a motion to dismiss alleging: (1) The Commission acted as a tribunal or court in this controversy but because it was not established by the legislature it was an unconstitutional body. For that reason and because it acted beyond the scope of its authorized powers the Commission's orders or directives were null and void. (2) The Commission was an administrative agency and could not constitutionally be given judicial powers. (3) The School District was denied due process because the enabling ordinance establishing the Commission did not provide for judicial review. (4) The legislature has not empowered a municipali-

ty to enact ordinances establishing commissions of this type and therefore any orders or directives issued by such an illegal body are null and void.

After dismissal of its petition the Commission thereafter filed application for leave to file amended complaint. In denying the application the trial court stated:

"The original petition was dismissed because the City of Cedar Rapids established a tribunal by the provisions of Chapter 69, which it had no authority to do.

"No amendment to the petition in this case can change the provisions of Chapter 69, enacted prior to the bringing of this suit."

The Commission contends the trial court erred, (1) in dismissing its petition and (2) in denying the Commission's application to amend its petition.

The appeal presents the following issues for review: (1) Is the Cedar Rapids Human Rights Commission a court or merely an administrative agency?; (2) Is the Cedar Rapids City Council prohibited by section 1, Article V of the Iowa Constitution from establishing by ordinance a body which is designated the Cedar Rapids Human Rights Commission and which acts as a court or tribunal?; (3) Is failure to provide for judicial review of the Commission's ruling a denial of due process?; and (4) Did the trial court err in denying the Commission's application for leave to file amendment to the petition after the court's ruling dismissing the petition?

I. The threshold issue of this appeal is whether the Commission is a "court" in the constitutional sense, or an administrative agency vested with quasi-judicial powers.

The trial court found that the City had established a tribunal or court. In particularly noting section 69.15 of the City ordinance the court stated:

"By. enactment of City Ordinance No. 54–70, amending Ordinance No. 104–69, the City Council has established a tribunal or court. The Council has given to the said tribunal or court the judicial power to require persons to cease and desist from unfair or discriminatory acts, to take affirmative action to remedy the unfair or discriminatory act including the power to require the hiring or reinstatement, or upgrading of employees, and the power to render judgment for back pay."

The trial court in its ruling sustaining the School District's motion to dismiss also expressed the view that, "It is important to note that the Commission's Petition in this Court and the ordinance (sections 69.16 and 69.17) provides that action in District Court is only to enforce an order issued and based upon an adjudication already made by the Commission acting in the judicial role. It does not provide for an appeal procedure. The ordinance does not provide for the Court to make an adjudication based on the record made before the Commission * * or based on the proceedings before the Commission plus such other pleadings and evidence as the District Court may require * * * or for a hearing anew or de novo * * *."

The Commission argues it is an administrative agency and not a court because it does not have all the powers and trappings of a court such as a disinterested judge, two adverse parties, specific procedures, rules of evidence, set time and place for meeting, power to subpoena, issue process, compel compliance with its ruling and orders and cite parties for contempt. The School District argues a "functional approach" should be taken in determining whether the Commission acted as a court and that in this case the facts show the Commission did so act.

This court in In Re Community Sch. Dist. of Malvern, 250 Iowa 1240, 1246, 98 N.W.2d 737, 741, stated this definition of "quasi-judicial":

" 'Designating an act or proceeding of or before an administrative tribunal or official of the general nature of a judicial act or proceeding but not within the judicial power as defined under constitutions.' " (Defi-

nition taken from Webster's New International Dictionary).

In a footnote the Minnesota supreme court in In Re Getsug, 290 Minn. 110, 186 N.W.2d 686, 690, cited this definition of "judicial act" from Webster's New International Dictionary (Second Ed.) (1947), p. 1344: "'An act invoking the exercise of judicial power, that is, the power to hear and determine controversies or to determine a question of right or obligation.'"

The court in In Re City of Kinloch, 362 Mo. 434, 242 S.W.2d 59, 63, stated not every exercise of duties judicial in nature is necessarily an exercise of the "judicial power of the state." Rather, judicial power "refers to such powers and authority as courts and judges exercise; such as legitimately pertain to an officer in the department designated by the Constitution as 'judicial'; such as are exercised in the ordinary forms of a court of justice, in a suit between the parties, with process." Other factors stressed are: an action being in the nature of a suit between the parties, American State Bank of Minneapolis v. Jones, 184 Minn. 498, 239 N.W. 144, 145 and Rommell v. Walsh, 127 Conn. 16, 15 A.2d 6, 9; the presence of officers constituting the court, a judge and a clerk, as well as the existence of a place for court to be held, Hobart v. Hobart, 45 Iowa 501, 503 and Peisker v. Chavez, 46 N.M. 159, 123 P.2d 726, 728.

"Blackstone defines a court as consisting of at least three constituent parts, namely, the actor, or plaintiff, who complains of an injury; the reus, or defendant, who is called upon to make satisfaction for it; and the judex, or judicial power, which is to examine the truth of the fact, to determine the law arising upon that fact, and, if any injury appears to have been done, to ascertain, and by its officers to apply, the remedy." 10 Words & Phrases, Court, p. 351, citing People v. Board of Trustees of Village of Saratoga Springs, 4 App.Div. 399, 39 N.Y.S. 607, 610.

"Courts in addition to the power of issuing process, have the right to hear, deter-mine, and decide legal controversies presented before them. Where any of these powers is lacking there is no court." Klein v. Hutton, 49 N.D. 248, 191 N.W. 485, 488.

In this controversy written complaints were prepared and filed with the Commission and served on the persons against whom they were filed. A public hearing was held before the 15 members of the Commission. The defendants had the right to file written answer to the complaint, be represented by counsel and cross-examine witnesses. Testimony was to be given under oath and strict rules of evidence did not apply. The complainants had the burden of proof of the allegations of the complaint.

The Commission acts in the capacity of a "plaintiff" although complaining persons presented the original issues. An administrative agency often acts upon a complaint by a citizen, although the agency through its staff will run the proceeding against the alleged offending party and not the citizen who complains. Thus, the agency, acting in the public interest, "complains of an injury." Of course, it could be argued the complaining party is the de facto plaintiff, but if Blackstone's first element alone were applied, many administrative agencies would be "courts."

The second element, existence of a defendant, is often present in administrative hearings of this nature and here the school board would be "called upon to make satisfaction" for the claim. Again, existence of a party to this type of proceeding acting as a defendant could make an administrative agency a court if that were the only factor to be applied.

■ The crux of the issue, however, lies in determining whether "judicial power" exists. Under the Blackstone definition, judicial power necessarily consists of three elements, examination of the "truth of the fact," determination of the "law arising upon that fact", and ascertainment and *application* of the remedy.

It is apparent the Commission made findings of fact here, but this alone is not sufficient to make it a court exercising judicial power. "Many administrative and quasi judicial bodies, as a part of their delegated duties, must hear and determine facts in order to ascertain what action the law imposes on them." In Re City of Kinloch, 362 Mo. at 440, 242 S.W.2d at 63. See also Hunter v. Coal Company, 175 Iowa 245, 309, 154 N.W. 1037, 1060–1061 and Handlon v. Town of Belleville, 4 N.J. 99, 71 A.2d 624, 626. The Commission obviously must make findings of fact when it deals with the civil rights claimed to have been violated.

The power to ascertain the facts alone is not adequate to make the Commission a court, nor is the determination of the law involved. See above citations. "A statute by which an official (or a board, commission or other agency) is required to ascertain the existence of facts and apply the law to the facts in order to determine his official action does not necessarily confer 'judicial power' in a constitutional sense." In Re City of Kinloch, 362 Mo. at 490, 242 S.W.2d at 63. In other words, it could be stated the Commission "charged with the duty of administering an act," must apply "the terms of that act to specific cases." Hunter v. Coal Company, 175 Iowa at 310, 154 N.W. at 1061, which dealt with the Workmen's Compensation Act.

Further support for the foregoing principles is found in Tracy v. Commissioner of Internal Revenue, 53 F.2d 575, 578 (6 Cir. 1931), where it is said:

"It must first be observed that the Board of Tax Appeals is an administrative tribunal, not a court. [citing authority] The mere fact that the Board may exercise judicial, or quasi judicial, powers in the performance of its official duties, does not militate against this position. In organization and function the Board is administrative. Many, if not most, executive and administrative officers are called upon to make determination of facts in the performance of their official duties, and to apply the law as they construe it to the facts so found. In so doing they do not exercise 'judicial power,' as that phrase is used in the Federal Constitution and laws. [citing authority]."

Finally, Blackstone's third element of judicial power—"to ascertain, *and by its officers to apply*, the remedy" (Emphasis supplied)—at least implies the power to enforce the decision. Courts speak in terms of the power to make "binding orders and judgment" or "the authority to enforce." See Fewel v. Fewel, 23 Cal.2d 431, 144 P.2d 592, 594; Harris v. Pine Cleaners, 274 S.W.2d 328, 333 (Mo.App.1954); State v. District Court of Eighteenth Judicial Dist., 147 Mont. 263, 410 P.2d 933, 935, citing State v. Bonner, 123 Mont. 414, 214 P.2d 747, 753; Galloway v. Truesdell, 83 Nev. 13, 422 P.2d 237, 242.

Harris v. Pine Cleaners, supra, has this statement: " * * * True 'judicial power' vested in the courts by our constitution is the power to 'decide and pronounce a judgment and carry it into effect * * *.' "

When one studies the ordinance in issue here, it is logical to conclude the Commission cannot enforce its decision except by suing in the district court within two years after entry of an order. Section 69.16. While the enabling ordinance (at 69.15) does speak in terms of "an order requiring" a person to do certain things, the Commission cannot have any order enforced through its own actions alone.

Thus, the Commission lacks one very important power possessed by courts of law.

Furthermore, the Commission more closely resembles a quasi-judicial body than a court. A quasi-judicial body regulates the activities of groups of persons within specified channels while "the judicial process contemplates a proceeding in which each party is represented in person or by counsel, with the tribunal acting as an arbiter. The administrative process envisages a proceeding in which the regulatory body may be represented before itself by its own counsel * * *. In one case, there is a determina-

tion of a controversy by an impartial tribunal, while in the other instance, the regulatory agency or officer is in part an interested party and in part a trier of the respective contentions advanced by its counsel and the counsel for other parties represented at the hearing." American Eagle Fire Ins. Co. v. Jordan, 67 F.Supp. 76, 79 (D.C. Dist. of Columbia 1946).

In appellate procedure, a trial court has no interest or participation while an administrative agency becomes a respondent seeking to sustain its own acts. *Jordan*, supra, at 79. See also Rommell v. Walsh, 127 Conn. at 20–22, 15 A.2d at 9.

■■ Quasi-judicial power resembles judicial power but any quasi-judicial power must be derived from and capable of being traced back to basic legislative or executive powers. See Galloway v. Truesdell, 83 Nev. at 21, 422 P.2d at 243. Thus, the Commission must have been set up to put into effect a function of legislative or executive power and the action complained of here should be a means to that end. The court in *Galloway*, 83 Nev. at 21, 422 P.2d at 243 states the term quasi-judicial should refer only to executive or legislative activity (which resembles judicial activity), since quasi-judicial power in reality is not judicial power (thus, the court says the term should be "pseudo-judicial.") A power of the judicial branch, then, cannot be quasi-judicial.

The problem of distinguishing between administrative agencies performing judicial or quasi-judicial functions, and courts, has probably become more difficult as the number and importance of administrative agencies has grown. Indeed, a whole new body of law has evolved in regard to administrative agencies.

The School District contends there is no set definition applicable in this situation so the determination must be made by reference to the facts. This approach is supported by some authority.

In Handlon v. Town of Belleville, 4 N.J. at 104, 71 A.2d at 626, it is said:

" * * * The specialized service of the administrative tribunal ofttimes partakes of the legislative, executive and judicial powers. [citing authority] The courts themselves provide what are essentially administrative processes. [citing authorities] Where the administrative tribunal's function partakes of the judicial, its exercise is styled 'quasi-judicial,' but it is the exercise of judicial power nonetheless, conditioned upon the observance of the traditional safeguards against arbitrary action—what Chief Justice Hughes had termed 'the rudimentary requirements of fair play.' [citing authority] The prefix 'quasi' is descriptive of the judicial faculty assigned to administrative agencies and public officers not a part of the judiciary. Whether the proceeding in essence is legislative or judicial is determined by the nature of the final act and the character of the process and operation rather than by the general character of the authority itself. Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936); Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932); Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908)."

See also Porter v. Iowa State Board Public Instn., 259 Iowa 571, 576, 144 N.W.2d 920, 923.

In this connection the trial court found, as pointed out earlier, that when the Cedar Rapids City Council gave the Commission power to require persons to cease and desist from unfair or discriminatory acts, to take affirmative action to remedy the unfair or discriminatory act including the power to require the hiring or reinstatement, or upgrading of employees, and the power to render judgment for back pay it did in fact establish a tribunal or court exercising a judicial power.

However, when the School District failed to comply with the directives or orders the Commission filed a petition asking the district court to order the School District to comply. It is obvious the Commission rec-

ognized it was without final authority to decide and render an enforceable judgment, which is the essence of the judicial power.

Where the awards and determinations of the Commission lack judicial finality and are not enforceable by execution or other process until a binding judgment is entered thereon by a regularly constituted court, the Commission is not exercising the powers of a court. Breimhorst v. Beckman, 227 Minn. 409, 35 N.W.2d 719, 733.

In the matter before us the quasi-judicial power granted the Commission can be traced back to basic legislative powers. Here there is legislation by the city banning certain unfair or discriminatory practices. Sections 69.10–69.13. The ordinance establishes the Commission to receive, investigate and pass upon complaints alleging violations of this ordinance but in the end when the complaint is well founded it must go to the courts for an effective enforcement order. It is apparent the Commission is exercising an *executive* function coupled with quasi-judicial powers which implements execution of the law by finding facts and determining alleged violations.

The question presented here was not raised in Iron Workers Local No. 67 v. Hart, 191 N.W.2d 758 (Iowa 1971), a proceeding on petition by a labor organization for review of an order of the Civil Rights Commission. It was the first appeal to reach this court calling for an interpretation of what is now chapter 601A, The Code, 1973, formerly chapter 105A of the 1971 Code. The question there was the power of the Commission to enter judgment against the alleged offending party for common law damages.

It is our opinion that under the circumstances disclosed by the record before us the grant to the Commission of the power to require persons to cease and desist from unfair or discriminatory acts, to take affirmative action to remedy the unfair or discriminatory act including the power to require the hiring or reinstatement, or upgrading of employees, and the power to

render judgment for back pay did not result in establishing a tribunal or court with authority to exercise judicial power.

II. Even though we have determined under this record the City Council did not establish a court exercising judicial powers one of the questions which remains is whether the City Council of Cedar Rapids had authority to establish such a body as is shown to exist here. This is in substance the issue presented by the School District's written brief and argument and one of the grounds alleged in its motion to dismiss.

Section 601A.12, The Code, states:

"Local laws may implement this chapter. Nothing contained in any provision of this chapter shall be construed as indicating an intent on the part of the General Assembly to occupy the field in which this chapter operates to the exclusion of local laws not inconsistent with this chapter that deal with the same subject matter."

This section of the Code would seem to allow the creation of the Commission. The implication becomes stronger when one considers the recent statutory and constitutional changes favoring "home rule." Thus, Article III, section 40, of the Iowa Constitution states: "Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government. * * *." There is nowhere the ordinance is inconsistent with the laws of the general assembly unless one concludes the fact there is no provision for judicial review is a conflict.

The power to create such a commission seems inherent in the statute implementing home rule. Section 368.2, The Code, 1973, as then in force provided in part:

"Bodies       corporate—name—statutory powers—rule of construction.

      *      *      *      *      *      *

" *   *   *

"It is hereby declared to be the policy of the state of Iowa that the provisions of the

Code relating to the powers, privileges, and immunities of cities and towns are intended to confer broad powers of self-determination as to strictly local and internal affairs upon such municipal corporations and should be liberally construed in favor of such corporations. The rule that cities and towns have only those powers expressly conferred by statute has no application to this Code. Its provisions shall be construed to confer upon such corporations broad and implied power over all local and internal affairs which may exist within constitutional limits. No section of the Code which grants a specific power to cities and towns, or any reasonable class thereof, shall be construed as narrowing or restricting the general grant of powers hereinabove conferred unless such restriction is expressly set forth in such statute or unless the terms of such statute are so comprehensive as to have entirely occupied the field. * * *."

If the ordinance deals with "local and internal affairs," the case is even stronger since the statute itself confers "broad and implied powers." "The term 'municipal affairs,' it has been stated, is not a fixed quantity, but fluctuates with every change in the conditions upon which it is to operate." 56 Am.Jur.2d, Municipal Corporations, Etc., section 128.

In Hutchinson Hum. Rel. Com'n v. Midland Cr. Man., Inc., 213 Kan. 308, 517 P.2d 158, 162, the court used the following language in determining discrimination to be a local problem:

" * * * [D]iscrimination against minorities has a direct and detrimental impact on the orderly process of government, the peace and tranquility of a community, and the health, safety and general well-being of its residents.

"Problems arising from racial and other forms of discrimination are especially common in population centers; the cancer of injustice· toward members of minority groups is peculiarly virulent on the local scene; discrimination is essentially a people problem, and must eventually be dealt with

and solved by people in the localities where they live."

The court went on to state the establishment of the Commission under the ordinance was a valid exercise of home rule power because the legislature had not preempted the field, even though there was a similar state statute, and because it was an exercise of a municipality's police power. *Id.*, 517 P.2d at 163–165. It should be pointed out the Commission in *Hutchinson* had no authority to issue orders as such, but could apply to the district court to enjoin violation of the ordinance and for enforcement of any conciliation agreement.

■ The validity and constitutionality of statutes and ordinances are presumed; any invalidity must be clear. See City of St. Paul v. Kekedakis, 293 Minn. 334, 199 N.W.2d 151, 153.

■ Since the legislature may grant quasi-judicial powers to agencies, Elk Run Telephone Co. v. General Telephone Co., 160 N.W.2d 311, 315 (Iowa 1968), it follows a municipality may do the same under the home rule statute so long as the delegation deals with local and internal affairs. The fact there is no express authority allowing municipalities to establish commissions with quasi-judicial powers should not be of importance, as "[t]he rule that cities and towns have only those powers expressly conferred by statute has no application * * *" in the Iowa Code. Section 368.2, The Code. Additionally, the Code grants "broad and implied" home rule powers.

■ It is the conclusion of this court a city has the authority under home rule power and under section 601A.12, The Code, to create this type of commission, assuming adequate standards and guidelines govern the delegation of any quasi-judicial or quasi-legislative powers.

Elk Run Telephone Co. v. General Telephone Co., supra, dealt with the adequacy of standards or guidelines test in determining the propriety of delegation of legislative power to administrative bodies rather

than with the delegation of quasi-judicial authority to an administrative agency. Nevertheless, the principles recognized in that opinion, 160 N.W.2d 316–317, are germane to the problem here.

We paraphrase some of the pertinent statements from that decision. The mere fact standards are general rather than specific does not militate against their acceptance and validity. Our decisions confirm the philosophy that standards set up need not be exact or precise if general policy is defined.

The important consideration is not whether the statute or ordinance delegating the power expresses *standards* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action. The presence or absence of procedural safeguards is important in determining whether the delegation is reasonable. With such safeguards interested parties are protected against arbitrary and capricious conduct on the part of administrative officials. Without them they may easily become the victims of such conduct. Each of the foregoing principles is well supported by citations of authorities.

The opinion concludes by noting the standards involved in that case "could well have [been] more detailed and certain."

Along this line is this statement from McRae v. Robbins, 151 Fla. 109, 9 So.2d 284, 290–291:

"Where a statutory board, commission or officer or other tribunal or agency is lawfully given administrative and limited quasi-legislative or quasi-judicial authority or duties, such authority or duties must not include any substantive legislative or judicial powers that may not be delegated; and such authority must be duly defined and limited by laws complete in themselves in prescribing delegated authority, so that by appropriate judicial review and control any action taken pursuant to such delegated authority or duties may be kept within the defined limits of the authority conferred and within the express and implied limitations of all controlling provisions and principles of dominant law."

The foregoing statement is repeated in 73 C.J.S. Public Administrative Bodies and Procedure § 36.

A similar statement is found in Bath, Inc. v. Pollution Control Board, 10 Ill.App.3d 507, 294 N.E.2d 778, 780:

" * * * [Q]uasi-judicial functions may be conferred upon and exercised by an administrative agency, provided the laws conferring such powers are complete in their content; are designed to serve a general public purpose; are such as to require a consistent and immediate administration; and further provided that all administrative actions are subject to judicial review. [citing authorities]."

III. In its motion to dismiss the School District asserted failure of the ordinance to provide for judicial review of the findings and rulings of the Commission was a denial of due process.

The trial court in determining "it is only when the City Council created Commission seeks to act in a judicial capacity such as adjudicating law points, issuing orders and making awards that its acts exceed its constitutional jurisdiction" sustained the motion on this ground as well as others. In reaching its decision the court felt it was important to note the ordinance provides action in the district court is only to enforce an order issued based upon an adjudication already made by the Commission acting in a judicial role; the ordinance does not provide for an appeal procedure or for the district court to make an adjudication based on the record before the Commission or on the proceedings before the Commission plus such other pleadings and evidence as the district court may require.

The trial court's position, as we understand, stems from the fact the Commission makes the ultimate decision and the ordinance does not give opportunity for an effective appeal from the decisions and orders of the Commission.

It is this ruling that gives rise to the third issue presented by this appeal.

The ordinance establishing the Commission does not provide for direct appellate review of findings or rulings whereas chapter 601A, The Iowa Civil Rights Act of 1965 in section 10 does provide for hearing on appeal to the district court as in equity and de novo. The district court is empowered to receive additional testimony and authority to affirm, modify or review orders of the Commission. Review in this court is de novo. See Iron Workers Local No. 67 v. Hart, 191 N.W.2d at 761.

The Commission makes two arguments in regard to this issue: (1) judicial review is not necessary for compliance with due process and (2) the School District could obtain judicial review by writ of certiorari.

■ The second argument will be considered first. A writ of certiorari is directed towards the question of whether an inferior tribunal, board or officer, exercising judicial functions, has allegedly exceeded its proper jurisdiction or otherwise acted illegally. Rule 306, Rules of Civil Procedure.

Reed v. Gaylord, 216 N.W.2d 327, 333–334 (Iowa 1974) has these statements:

"Two rules stand out in regard to certiorari. (1) It is not an appeal and is not issued to correct mere errors on the part of the inferior tribunal. [citing authorities] (2) A writ shall not be denied or annulled because plaintiff has another plain, speedy or adequate remedy, 'but the relief * * shall be strictly limited to questions of jurisdiction or illegality of the acts complained of * * *.' Rule 308, R.C.P.

* * * * * *

" * * *

"There is an illegality within the meaning of the rule when there is not substantial evidence to support the findings on which the inferior court or tribunal based its conclusions of law. [citing authority] ' * * [If] there is no substantial evidence to support findings upon which a lower tribunal arrives at a challenged conclusion of law, it acts illegally. * * * [citing authorities.]' "

The problem is whether the extent of review thus afforded by certiorari furnishes adequate safeguards to those who are affected by the administrative action or is a right of appeal necessary to protect such parties against arbitrary and capricious conduct on the part of the administrative officials in absence of statute.

The School District in seeking to sustain the ruling of the trial court on this ground calls attention to various Code sections which provide for some substantial review of an administrative agency's decision including appeals from industrial commissioner, section 86.29; driver's license suspension, section 321.215; from the Iowa Employment Security Commission, section 96.6, subsections 8–10; and the appeal provided under the Civil Rights Act, section 601A.10. From this the School District argues that assuming without admitting the Commission is an administrative body then not even the minimal review necessary for due process has been provided for in the ordinance since review provided by certiorari does not provide an appeal procedure which tests the legal merits of a case.

This returns us to the Commission's first argument stated earlier—judicial review is not necessary for compliance with due process.

■ Two main requirements of the due process clause of amendment 14 are (1) notice and (2) an opportunity to be heard. Smith v. Iowa Employment Security Commission, 212 N.W.2d 471, 472 (Iowa 1973).

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873, has this statement:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections. [citing authorities]."

Examination of the ordinance discloses that section 69.10(f) provides, after a failure of the parties to conciliate, the Commission, (1) may set the matter for public hearing; (2) serve notice of the complaint and of the time and place of the hearing to the persons charged and the complainant; and (3) shall allow answers to be filed by the persons charged and allow them to appear, testify, call witnesses and cross-examine. And, even though the city attorney or Commission staff conducts the case for the Commission, no member of the investigating staff is allowed to participate except as a witness in the deliberations of the committee.

■ It has never been a rule of constitutional law that all administrative acts be subject to judicial review in order to have compliance with due process; in short, due process is not judicial process. Reetz v. Michigan, 188 U.S. 505, 507, 23 S.Ct. 390, 47 L.Ed. 563, 566 and St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 77, 56 S.Ct. 720, 737, 80 L.Ed. 1033, 1054 and authorities therein. See also Cranston v. Industrial Commission, 246 Wis. 287, 16 N.W.2d 865, 866 and Sessions v. State of Connecticut, 293 F.Supp. 834, 838–839 (D.Conn.1968), aff'd, 404 F.2d 342 (2 Cir. 1968).

In *Sessions* the court quoted with apparent approval this statement from L. B. Wilson, Inc. v. Federal Communications Com'n, 83 U.S.App.D.C. 176, 170 F.2d 793, 802: "For due process there must be an orderly proceeding in an appropriate and impartial tribunal; but due process is not necessarily judicial process; it may for some purposes be accorded by an administrative board or officer."

It has been held the "right of an administrative board to function does not depend upon provisions granting or failing to grant an appeal to the courts." Financial Aid Corporation v. Wallace, 216 Ind. 114, 122, 23 N.E.2d 472, 476.

Nevertheless, administrative bodies are required to adopt a procedure which "accords with substantial justice and affords the parties a fair opportunity to be apprised of what they are to meet," but "the same accuracy of procedure is not required as in courts of record." Smith v. Hays, 10 F.2d 145, 146 (8 Cir. 1925). Other courts have stated the hearing must be conducted in such a way so as to safeguard the rights of interested parties. Board of Education v. State Bd. Pub. Instn., 261 Iowa 1203, 1211, 157 N.W.2d 919, 923–924 and Zwingle Ind. Sch. Dist. v. State Board of Public Instrn., 160 N.W.2d 299, 302 (Iowa 1968).

■ The foregoing authorities compel the conclusion that in the absence of a statutory requirement providing otherwise judicial review of the findings and orders of an administrative agency is not necessary for compliance with due process.

It has been pointed out earlier that chapter 601A in section 10 provides a detailed procedure for review of orders, directives and findings of the Commission. In section 601A.12 the legislature expressly granted local authorities the power to implement that chapter since it was not the legislative purpose to occupy the field to the exclusion of local laws. But the legislature directed the local laws must not be inconsistent with chapter 601A which deals with the same subject matter.

■ Although not essential to due process we are convinced it was the legislative intent that ordinances adopted for the purpose of implementing chapter 601A must not be inconsistent. The Cedar Rapids ordinance is inconsistent in not providing a statutory procedure for judicial review, a contention sufficiently raised by the School District in the trial court.

■ Even though we disagree with the trial court's rulings, as stated in divisions I, II and III of this opinion, we conclude from our de novo review the City Council's fail-

ure to provide for judicial review similar to that afforded by section 601A.10, The Code, invalidates the ordinance.

In view of the foregoing determination we do not reach the fourth issue presented for review.

The case is therefore—affirmed.