STATE of Iowa ex rel. William KEAS-LING and Debbie Keasling, By Their Mother and Next Friend, Barbara KEASLING, Appellant,

v.

Rickey D. KEASLING, Appellee.

No. 88–803.

Supreme Court of Iowa.

June 14, 1989.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., E. Dean Metz, Asst. Atty. Gen., and Victoria Rush, Asst. County Atty., for appellant.

Michelle Hoyt, Ottumwa, and Ruth P. Walz, Dubuque, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL and ANDREASEN, JJ.

LARSON, Justice.

Rickey Keasling's employer was served with a copy of an order by the Child Support Recovery Unit (CSRU) in Wapello County for mandatory income withholding pursuant to Iowa Code section 252D.1(3) (1987). The order stated that Keasling was

$19,800 delinquent in his child support payments and that the employer would be required to withhold portions of Keasling's wages to be applied on the future child support installments and on the arrearage. A copy of the order was sent to Keasling, who filed a motion under section 252D.2 to quash the withholding order.

Keasling's motion to quash alleged several defects in the order, including insufficient notice to him, excessive withholding requirements, and a lack of authority in the CSRU to enter such an order. The last issue is based on Keasling's assertion that an "order" by the CSRU unconstitutionally invades the province of the court. The district court agreed, but we reverse and remand.

The facts are not disputed. Keasling and his former wife, Barbara, were divorced in Nebraska in August 1985. They had two children. Keasling was ordered to pay $300 per month for each child as temporary support commencing as of May 1, 1985, and $225 per month per child commencing September 1, 1985. Keasling moved to Iowa, and when a substantial delinquency developed, Barbara began an action under our Uniform Support of Dependents Law, Iowa Code ch. 252A. At that time, in September 1985, Keasling was delinquent $1650.

A default judgment was entered against Keasling in the uniform support action on July 16, 1986. Under the judgment, Keasling was ordered to pay $225 per month for each of the two children and to pay $6700 in past due support under the Nebraska decree. This order also provided that on default the court would order an assignment of Keasling's earnings or other income to pay the obligation.

Keasling apparently had paid nothing under the uniform support judgment when, on September 2, 1986, an order was entered to show cause why he should not be held in contempt. Keasling did not appear for the show-cause hearing, but he entered into a stipulation on that date in which he acknowledged his delinquency and agreed to execute a wage assignment. He also agreed that "[a]rrearages plus sums not paid when due are still owed and may be collected by any means provided by law, including but not limited to an offset of federal or state income tax refunds authorized by law."

Keasling still did not make the required payments and, on March 7, 1988, the order in question was filed by the CSRU. This order recited the fact that Keasling was delinquent in the amount of $19,800 and directed the employer to deduct $450 per month from his wages to be applied on future support and further ordered the deduction of $150 per month to be applied on the $19,800 delinquency.

The wage withholding was to commence ten days after service of the order on the employer, and the employer was directed to furnish a copy of the withholding order to Keasling within one working day, as required by sections 252D.1(2) and 252D.4, respectively. The order also quoted Iowa Code section 252D.2 which establishes the procedure for an employee to file a motion to quash the wage withholding order. Keasling did file a motion to quash, asserting in relevant part that an order by the CSRU violated the constitutional separation of powers and was an impermissible intrusion on the court's powers.

The statutory authorization for an order for wage assignment is found in Iowa Code section 252D.1(2) which provides that,

if support payments ... become delinquent in an amount equal to the payment for one month, upon application of a person entitled to receive the support payments, the child support recovery unit or the district court may enter an ex parte order notifying the person whose income is to be assigned, of the delinquent amount, of the amount of income or wages to be withheld, and of the procedure to file a motion to quash the order of assignment, and shall order an assignment of income and notify an employer, trustee, or other payor by certified mail of the order of the assignment of income requiring the withholding of specified sums to be deducted from the delinquent person's periodic earnings, trust income, or other income sufficient to pay the support obligation and ... requiring the

payment of such sums to the clerk of the district court.... The assignment of income is binding on an existing or future employer ... ten days after the receipt of the order by certified mail.

Section 252D.2(1) provides this process for an employee to challenge the order for assignment:

A petitioner under section 252D.1, subsection 4, may move to quash the order of assignment at any time by asserting that the delinquency did not occur or has been paid. A person whose income has been assigned under section 252D.1 may move to quash the order of assignment by filing the motion to quash and notice of the motion to quash with the court within ten days after the entering of the court order of assignment under section 252D.1, subsection 3, or at any time upon a showing of a mistake of fact relating to the delinquency. The clerk of the district court shall schedule a hearing on the motion to quash for a time not later than seven days after the filing of the motion to quash and the notice of the motion to quash. The clerk shall mail to the parties copies of the motion to quash, the notice of the motion to quash, and the order scheduling the hearing.

I. The district court's ruling, based on its view that chapter 252D is an invalid delegation of judicial function, pointed out two problems: (1) the statute allows an agency to make a fact-finding, *i.e.*, whether the employee is at least one month delinquent as required by section 252D.1(3); and (2) the statute allows the CSRU to enter an "order" for withholding, and this is a function reserved to the courts.

The State of Iowa, acting on behalf of Barbara Keasling and her children, concedes that these are judicial-type functions being exercised by the CSRU. It points out that section 252D.1(3) illustrates that fact by providing that such an order may be entered by either the CSRU or the district court. Further, the State acknowledges that Iowa Code section 598.22 (1987) provides a parallel authority, solely in the district court, to order an assignment of earnings. The State agrees that an order

by the CSRU is a judicial-type order, but it argues that the question is not whether the order was a judicial-type function but whether such function is reserved solely for the courts. It argues that it is not.

Keasling argues that chapter 252D violates article III, section 1 of our constitution, which provides:

The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

He also argues that it violates article V, section 1, which states:

The judicial power shall be vested in a supreme court, district courts, and such other courts, inferior to the supreme court, as the general assembly may from time to time establish.

The first question raised by the district court's ruling is whether the CSRU acted in contravention of these constitutional provisions when it "found" that Keasling was at least one month delinquent. *See* Iowa Code § 252D.1(3). The critical findings and the terms of Keasling's support obligation had been made earlier in the Nebraska decree and the uniform support action under Iowa Code chapter 252A. The "finding" by the CSRU, that Keasling was at least one month delinquent, was more administrative than judicial; it simply compared Keasling's performance with the requirements of the existing court orders.

We have held that administrative details may be left to an executive agency without characterizing it as an improper delegation of legislative or judicial powers. In *State Board of Regents v. Lindquist*, 188 N.W. 2d 320 (Iowa 1971), a class action was brought against the state board of regents challenging the constitutionality of a statute which authorized issuance of revenue bonds to build and equip additions to the University of Iowa Hospitals. The Iowa Constitution contains certain procedures to be followed and restrictions which must be

observed when issuing general obligation bonds. The board, presumably to simplify its efforts to generate funds, employed a revenue bond approach pursuant to a newly enacted statute.

The constitutionality of the statute was challenged, in part, on a claim that the statute attempted to vest the board of regents with legislative and judicial powers. We held that it did not, because "[t]he statute prescribes in considerable detail what the Board may do and how it must proceed. The functions left to the Board are actually administrative details, not the functions of legislating or adjudicating." *Lindquist*, 188 N.W.2d at 323.

■ An agency may legally be vested with quasi-judicial powers, including the power to hear and determine facts as a necessary adjunct to determining what action the law imposes. *See Cedar Rapids Human Rights Comm'n v. Cedar Rapids Community School Dist.*, 222 N.W.2d 391, 396 (Iowa 1974). This power to ascertain facts, standing alone, does not necessarily confer "judicial power" in a constitutional sense. *Id.* In *Cedar Rapids*, the city's human rights commission considered a claim of sex discrimination by two teachers who were terminated for pregnancy. Pursuant to a Cedar Rapids' human services ordinance, the commission held a hearing, found that the employer had discriminated against the claimants, and issued "directives" to the employer to pay compensation for lost time, grant maternity leave to one of the complainants, and offer a contract for future teaching services. The employer was also ordered to pay all costs incurred by the commission.

We held in *Cedar Rapids* that, despite the commission's exercise of judicial-type functions in making findings of fact and entering orders, it was not acting as a court because "the awards and determinations of the Commission lack judicial finality and are not enforceable by execution or other process until a binding judgment is entered thereon by a regularly constituted court...." *Cedar Rapids*, 222 N.W.2d at 397–98. In that case, the commission relied

on the district court in a separate action to enforce its order.

It is clear from these authorities that an administrative agency may make factual determinations and even "adjudicate" rights of the parties without running afoul of the constitutional separation of powers. It is when an agency purports to enter enforceable judgments that we have drawn the line of permissibility. This is so because it is the power to render enforceable judgments which is the "essence of ... judicial power." *Cedar Rapids*, 222 N.W.2d at 398. Other cases have reached similar result. *See, e.g., Chauffeurs Local Union 238 v. Civil Rights Comm'n*, 394 N.W.2d 375, 382 (Iowa 1986); *City of Iowa City v. Westinghouse Learning Corp.*, 264 N.W.2d 771, 772 (Iowa 1978).

■ In the present case, the order for withholding was not a "judgment" in the sense that it was independently enforceable, despite Keasling's characterization of it as a judgment. The order had no independent enforceability by execution or other process but depended on a separate petition to the district court for an order of enforcement. The order is merely an "executive function coupled with quasi-judicial power which implements an execution of the law [or here, the court's judgment] by finding facts and determining alleged violations." *See Cedar Rapids*, 222 N.W.2d at 398.

In cases where activities of coordinate branches of government rub shoulder-to-shoulder, as they do in child support cases, we must view the concept of separation of powers with a certain amount of pragmatism and cooperation. In areas of concern mutual to separate branches of government, the boundaries of respective authority are not always clearly circumscribed. In those cases, it is permissible, often even desirable, to view the constitutional allocation of authority with an eye toward a common goal. The Supreme Court has said, in that connection, that

it is a breach of a National fundamental law if Congress gives up its legislative power and transfers it to the President or to the Judicial branch, or if by law it

attempts to invest itself or its members with either executive power or judicial power. This is not to say that the three branches are not coordinate parts of one government and that each in the field of its duties may not invoke the action of the two other branches insofar as the action invoked shall not be an assumption of the constitutional field of action of another branch. In determining what it may do in seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the governmental coordination.

*J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 351, 72 L.Ed. 624, 629 (1928).

"What is judicial power cannot be brought within the ring-fence of a definition. It is undoubtedly power to hear and determine; but this is not peculiar to the judicial office. Many of the acts of administrative and executive officers involve the exercise of the same power. Boards for the equalization of taxes, of public works, of county commissioners, township trustees, judges of election, viewers of roads, all, in one form or another, hear and determine questions in the exercise of their functions, more or less directly affecting private, as well as public rights.... 'The authority to ascertain facts and to apply the law to facts when ascertained, appertains as well to the other departments of the government as to the judiciary.'"

*Hunter v. Colfax Consol. Coal Co.,* 175 Iowa 245, 310–11, 154 N.W. 1037, 1061 (1916) (quoting *State ex rel. Attorney Gen. v. Hawkins,* 44 Ohio St. 98, 112, 5 N.E. 228, 234 (1886)).

We believe that "common sense and the inherent necessities of the governmental coordination" involved in matters of child support suggest that Iowa Code chapter 252D merely reflects a plan based on a mutual goal of effecting the most efficient, yet just, method of dealing with the problem of delinquent child support. The problems faced by courts in attempting to obtain compliance with child support orders have been recognized by us. *See, e.g., In re Marriage of Carlson,* 338 N.W.2d 136, 137, 141–42 (Iowa 1983); *Dwyer v. Clerk of Dist. Court,* 404 N.W.2d 167, 172 (Iowa 1987) (Reynoldson, C.J., dissenting).

The facts of the present case mirror the concern expressed in these cases that the court system, acting alone, has not been effective in obtaining compliance with its child support orders. In this case, Keasling was ordered by the Nebraska court in the original dissolution action to make support payments. He apparently made none. The Iowa court then ordered him to make payments following a hearing under our Uniform Support Act. He again failed to pay as required. After he was cited for contempt and virtually saw the jailhouse door, he made only token payments far short of paying even his current installments, to say nothing of his $19,800 delinquency. While it is true that garnishment of Keasling's wages could have been effected under court proceedings, the fact is that it was not. It was not until the CSRU order was entered that the prior support orders of the court got his full attention.

■ A statute is presumed to be constitutional, and any invalidity must be clearly shown. *Cedar Rapids,* 222 N.W.2d at 399. In a case such as this, where exercise of such powers is not clearly proscribed by the constitutional provisions concerning separation of powers, it is up to this court to define the proper parameters of its authority. We believe Iowa Code chapter 252D is constitutional under both article III and article V. We therefore reverse the district court on this issue.

II. Keasling argues that, even if chapter 252D were considered to be constitutional, it provides inadequate protections for his rights. He complains that the statute, by referring to a one-month delinquency as the condition of the CSRU order together with the language of the underlying federal statute, requires the assignment to occur "without need for any amendment to the support order involved or for further action by the Court or other entity which issued such order." 42 U.S.C.

§ 666(b)(2), (4)(A). These statutes imply a requirement of prompt action, according to Keasling. He argues that the intent is that "income withholding would begin within one month of delinquency. Thus, withholding on many months of delinquency requires a difference in the due process protections necessary to the absent parent." Keasling's argument is an interesting one: the more delinquent the absent parent is, the more protection is obtained from the effect of the court's order.

■ We reject his suggestion that the statute should be inapplicable when a large delinquency is involved. This interpretation would run counter to the purpose of this act, which does not suggest such a result. Furthermore, it is difficult to claim that the amounts he is expected to pay come as a great surprise; he had been notified in all prior court proceedings that he was required to pay certain amounts of child support and was even notified that a wage assignment would be required as a condition to escaping punishment for contempt.

■ Regarding the matter of notice, the income withholding under the order was not to take place for ten days, and this gave him adequate time to file his motion to quash. We believe this is an adequate safeguard. *See Ironworkers Local No. 67 v. Hart,* 191 N.W.2d 758, 772 (Iowa 1971) (in power-delegation questions, important consideration not precise standards but adequate safeguards).

■ He contends that the statute does not allow adequate grounds for relief because it provides only that the motion to quash can raise the identity and the amount owed. This case itself belies the suggestion that the scope of a motion to quash is so severely limited because Keasling actually raised constitutional arguments in his motion. We believe the provision in section 252D.2 which allows an absent parent to challenge the *amount* owed necessarily encompasses virtually any challenge to the wage withholding because, if for any reason the proceeding is improper, no amount is owed. We therefore reject Keasling's arguments that he does not receive sufficient protection under the statute.

We conclude that the statute is not unconstitutional and that it provides adequate safeguards. Accordingly, we reverse and remand for reinstatement of the wage withholding order.

REVERSED AND REMANDED.