The Morgan County Department of Human Resources ("DHR") appeals from a judgment of the district court holding that § 38-10-8, Ala. Code 1976, is unconstitutional. We reverse.
B.W.J. is the father of two children by A.J. and one child by C.M.; AJ. and C.M. are receiving Aid to Dependent Children ("ADC"). B.W.J. has been ordered to pay $295 per month for the support of his two children by A.J., and $75 per month for the support of his child by C.M. In connection with the support order for A.J.'s children, the district court issued an Income Withholding Order ("I.W.O.") and had it served on B.W.J.'s employer. No I.W.O. was issued or served, however, in connection with the support order for C.M.'s child.
The amount of money remitted to DHR by B.W.J.'s employer was insufficient to satisfy the total monthly child support due under the separate court orders for B.W.J.'s three children by two different mothers. DHR, therefore, prorated the funds it received, sending A.J. approximately 70 percent, and C.M. approximately 30 percent, of the money each month. The statutory authority for DHR's allocating a pro rata share of the total amount of child support it receives to each family for whom support has been ordered is found in § 38-10-8. That section provides, in pertinent part, the following:
 "When an obligor is subject to more than one support order being enforced by the department and the amount received from *Page 691 
the obligor for distribution is not sufficient to satisfy the total amount due under all of the orders, distribution of current support shall have priority over any past due support. Where two or more orders for current support against an obligor are being enforced by the department and the amount received from the obligor is not sufficient to satisfy all current support due, the state department shall allocate a pro rata share of the total amount received to each family for whom support is being enforced by the department. When two or more support orders are being enforced against an obligor by the department, more than one of which has an accumulated arrearage, and the total amount collected is in excess of the amount sufficient to satisfy current support due under all of the orders, but is insufficient to satisfy all arrearages due, the department shall allocate a pro rata share of the amount collected, over and above the amount needed to satisfy the current support, to each family for whom support is being enforced and to whom an arrearage is owed. Distribution shall be made based upon the percentage of the total amount required to satisfy all of the respective support orders multiplied by the total amount available for distribution."
(Emphasis added.)
The district court held that § 38-10-8 violates the separation-of-powers provisions of the Alabama Constitution. The court explained that it thought the statute was unconstitutional because it allowed DHR, an agency of the executive branch of government, to disregard the I.W.O., a "duly constituted and legal order of a court to pay out money for the use and benefit of the children of [A.J.]." The court also determined that the statute "denied [A.J.] and her children the right to their court-ordered property without due process" of law.
On appeal, DHR cont.ends that the district court had no jurisdiction to declare § 38-10-8 unconstitutional because, DHR argues, the attorney general had not been served with notice of a challenge to the constitutionality of the statute. DHR correctly points out that § 6-6-227, Ala. Code 1975, requires a party who challenges the constitutionality of a state statute to serve the attorney general with notice of the challenge. The record does not indicate that any party raised a constitutional challenge to § 38-10-8. Instead, it appears that the district court raised the issue sua sponte.
In Ex parte Northport Health Service, Inc., 682 So.2d 52 (Ala. 1996), our supreme court held that if a trial court decides, sua sponte, that a statute is unconstitutional, then its order is void unless the attorney general was served pursuant to § 6-66-227 and given an opportunity to be heard. Northport HealthService does not, however, dictate that we hold the district court's order void.
In Northport Health Service, the attorneys represented private parties and they had no statutory duty to advocate the validity of the legislation at issue. Here, the attorney for Morgan County DHR was a "specially appointed Attorney General"[1] who had a duty to "attend, on the part of the state, to . . . civil actions in which the state . . . may be in any manner concerned." See
§ 36-15-1, Ala. Code 1972.
The record does not show that the district court gave the parties any indication, before it issued its written order, that it was inclined to hold the statute unconstitutional. When counsel for DHR received the court's order explaining why it believed the statute was unconstitutional, counsel filed a motion for a new trial. That motion argued that the court had erred in declaring § 38-10-8 unconstitutional. The district court held a hearing on the motion, and counsel for DHR was present at the hearing. Under the circumstances, we cannot say that the attorney *Page 692 
general was not "served with notice" or "given the opportunity to be heard" on the issue of the constitutionality of the statute. We will, therefore, address the merits of the constitutional issue.
Our analysis of § 38-10-8 begins with a presumption in favor of its constitutionality, see City of Montgomery v. WaterWorks Sanitary Sewer Board, 660 So.2d 588, 596 (Ala. 1995), and a recognition of our duty to construe the statute to uphold it and to effectuate the intent of the legislature if possible, seeFolsom v. Wynn, 631 So.2d 890 (Ala. 1993). Section 38-10-11
specifically states that the legislature "intended that [the Child Support Act] be construed and administered to the end that children shall be maintained *om the resources of the responsible parents."
Section 30-3-61(a), Ala. Code 1975, mandates that all child support orders include I.W.O.'s. DHR is charged by statute with the responsibility of administering income withholding for child Support payments collected pursuant to Title IV-D of the Social Security Act. See § 38-10-3, Ala. Code, 1975. See also42 U.S.C. § 651 et seq. "[A]dministrative details [of managing a child support collection program] may be left to an executive agency without characterizing it as an improper delegation of legislative or judicial powers." State ex rel. Keasling v.Keasling, 442 N.W.2d 118, 120 (Iowa 1989).
 "[F]undamental to our tripartite structure . . . is the notion of shared governmental power and the need for harmonious cooperation among the coordinate branches. Nowhere is this principle more pertinently demonstrated than in the realm of child support collection and enforcement."
State ex rel. Allee v. Gocha, 555 N.W.2d 683, 684 (Iowa 1996) (citations omitted).
 "In cases where activities of coordinate branches of government rub shoulder-to-shoulder, as they do in child support cases, we must view the concept of separation of powers with a certain amount of pragmatism and cooperation. In areas of concern mutual to separate branches of government, the boundaries of respective authority are not always clearly circumscribed. In those cases, it is permissible, often even desirable, to view the constitutional allocation of authority with an eye toward a common goal."
State ex rel. Keasling v. Keasling, 442 N.W.2d at 121.
By allowing DHR to allocate a portion of the payment it receives from B.W.J.'s employer to satisfy a child-support obligation for which there is no corresponding I.W.O., §38-10-8 does not authorize the executive branch to "disregard" an order of the judicial branch. If DHR had sent all of the money it received from B.W.J.'s employer to A.J. because the child support order in effect for A.J.'s children was accompanied by an I.W.O., and it had sent none of the money to C.M. because the child support order in effect for C.M.'s child was unaccompanied by an I.W.O., then DHR could, likewise, be accused of disregarding a court order — the child support order relating to C.M.'s child. DHR's pro rata allocation of payments from an obligor to separate obligees was designed to achieve the legislative goal "that children shall be maintained from the resources of the responsible parents." § 38-10-11, supra.
When the Alabama legislature authorized DHR to make a pro rata allocation of child support payments from an obligor to all obligees, it was delegating the power to administer the income withholding provision of the Child Support Act to an agency of the executive branch. Our supreme court has set out the following test to determine whether such a delegation violates the doctrine of separation of powers:
 "The doctrine of separation of powers does not prohibit the legislature from delegating power to execute and administer laws, so long as the delegation carries reasonably clear standards governing execution and administration. Folsom v. Wynn, 631 So.2d 890 (Ala. 1993) (holding that the proration statute was not an unconstitutional delegation of authority, but that the Governor had acted unconstitutionally when he imposed five percent proration on the judiciary without considering whether the remaining appropriations were adequate for the judiciary to perform its constitutionally mandated duties)." *Page 693 
Krupp Oil Co. v. Yeargan, 665 So.2d 920, 922-23 (Ala. 1995). The following directive in § 38-10-8 contains "reasonably clear standards governing execution and administration" of the income withholding provisions of the Child Support Act:
 "Where two or more orders for current support against an obligor are being enforced by the department and the amount received from the obligor is not sufficient to satisfy all current support due, the state department shall allocate a pro rata share of the total amount received to each family for whom support is being enforced by the department."
We hold that § 38-10-8 does not violate the separation-of-powers provisions of our state constitution.
The statute also does not deny A.J. due process of law. TheFourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." In analyzing a due process claim such as the one before us, the first inquiry is whether the claimant has a protectable property interest in the benefit asserted. See Slawson v. Alabama Forestry Comm'n,631 So.2d 953 (Ala. 1994).
 "`To have a protectable right a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. The courts have rejected the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause. The question is not merely the weight of the individual's interest, but whether the nature of the interest is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment.'"
Slawson, 631 So.2d at 957 (quoting Ellard v. State,474 So.2d 743, 745 (Ala.Crim.App. 1984), affirmed, 474 So.2d 758 (Ala. 1985)).
If the claimant has a property interest in the benefit asserted, the next inquiry is whether the statutory procedure in question is adequate to protect that interest. Mathews v.Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The adequacy of the procedure is determined by weighing the following factors:
 "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the functions involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
Mathews v. Eldridge, 424 U.S. at 332, 96 S.Ct. 893.
Here, A.J. has a property interest in having her child support order paid in full by B.W.J.[2] By the same token, C.M. also has a property interest in having her child support order paid in full. Neither woman, however, has a legitimate claim of entitlement to have her support order paid in full before the other's is paid. Moreover, the State of Alabama has an interest in seeing that each child for whom support has been ordered receives at least a portion of that support every month. See
§ 38-10-11, supra. The legislature could have concluded that the fiscal and administrative burden that would be imposed upon DHR and the court system by mandating additional procedural requirements whenever an obligor with more than one child support obligation failed to pay both obligations in full would be unduly burdensome. Finally, in the absence of any suggestion from A.J. as to which specific right has been violated and what procedures would satisfy due process to protect that right, we will not speculate about any additional procedural requirements. We conclude that § 38-10-8 does not deny A.J. and her children due process of law. *Page 694 
The judgment of the district court holding § 38 10-8 unconstitutional is reversed, and the cause is remanded for proceedings consistent with the principles expressed in this opinion.
REVERSED AND REMANDED.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.
[1] Section 38-2-4 provides, in pertinent part:
 The commissioner [of the state Department of Human Resources] with the approval of the Attorney General shall be authorized, subject to the provisions of the state merit system law to appoint a legal counsel for the State Department of Human Resources. He shall be commissioned as assistant attorney general and attorney general but he shall devote his entire time to the business of the Department of Human Resources."
[2] If the right to receive child support were not a "property right," there would be no need for an assignment or rights, as provided in §§ 38-10-4 and 38-10-5, Ala. Code 1975. CompareMcAllister v. Altus Bank, 578 So.2d 1266, 1269 (Ala. 1991) (because an equitable right of redemption is a "property interest," it is assignable and transferable).