**STATE of Iowa, ex rel. Sara ALLEE, Appellant,**

v.

**Roberta L. GOCHA, Appellee.**

**No. 95–550.**

Supreme Court of Iowa.

Nov. 20, 1996.

Thomas J. Miller, Attorney General, and Christina F. Hansen, Assistant Attorney General, for appellant.

Roberta L. Gocha, Clinton, pro se.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This case concerns the constitutionality of Iowa Code section 252C.5(2) (1995), a statute authorizing department of human services agents to prepare orders for child support and present them to the district court for summary approval. The statute's constitutionality has been challenged, not by a litigant, but by the district court. The court refused to approve a support order routinely presented by the agency, ruling that section 252C.5(2) limits the court's ability to carry out its judicial function and thereby violates the separation of powers doctrine. Because we find room in the statutory scheme of section 252C.5(2) for the district court to exercise its judicial discretion before approving an order, we reverse and remand for further proceedings.

I. The facts are not disputed. The Iowa Department of Human Services placed Sara Allee, the minor daughter of Roberta Gocha, in foster care. In accordance with Iowa Code chapter 252C and section 234.39, the department's Foster Care Recovery Unit conducted administrative proceedings to establish Gocha's obligation for current and accrued foster care costs. Gocha cooperated with the agency in completing a financial statement of her income and expenses. Once the agency calculated the amount of support owed, it notified Gocha and also advised her that a support order in that amount would be entered unless she produced additional financial information or requested a hearing in district court. Gocha provided no further information, filed no objections, and declined to request court review.

Counsel for the agency then mailed the district court a standardized administrative order for support, filled in with information pertaining to Gocha's circumstances, and asked the court to approve it in accordance with Iowa Code section 252C.5(2). That statute provides:

The administrator's order shall be presented, ex parte, to the district court for review and approval. Unless defects appear on the face of the order or on the attachments, the district court shall approve the order. The approved order shall have all the force, effect, and attributes of a docketed order or decree of the district court.

Iowa Code § 252C.5(2).

The district court refused to sign the order, troubled by the evident statutory imperative of approval in the absence of defects appearing on its face or supporting documents. In an expanded ruling, the court acknowledged that the order's lack of enforceability without judicial approval dispelled any concern over usurpation by the agency of judicial power. It nevertheless perceived the statute as limiting any substantive inquiry into the proceedings. That limitation, the court believed, amounted to an unwarranted legislative interference with the exercise of its own judicial power. This appeal by the agency followed.

II. A challenge to the constitutionality of a statute is reviewed on appeal de novo. *Federal Land Bank v. Arnold,* 426 N.W.2d 153, 156 (Iowa 1988). Legislative enactments carry with them a strong presumption of constitutionality. *Reynolds v. Iowa Dep't of Human Serv.,* 493 N.W.2d 813, 815 (Iowa 1992). Thus we are obliged to consider every reasonable basis for upholding the statute in question. *State v. Osmundson,* 546 N.W.2d 907, 909 (Iowa 1996).

III. Federal law requires that states participating in federally funded public assistance programs implement expedited procedures to collect child support. *See generally* 42 U.S.C. § 666 (1994) (detailing procedures for establishing and enforcing support orders, either administratively or judicially, that satisfy criteria for full faith and credit

among the several states). In keeping with this federal mandate, Iowa has enacted legislation that provides notice to the obligor of the State's intent to establish a support order, notifies the obligor of the right to insist on a negotiation conference, insures the right to a judicial hearing, governs time frames to avoid default, and establishes procedures for certifying the administrative proceeding and obtaining the court's approval to make the judgment enforceable. Iowa Code §§ 252C.3, .4, .5. Administrative regulations intended to implement this statutory scheme are detailed in the Iowa Administrative Code, rule 440—99.41 (1993).

The controversy before us centers solely on that narrow part of the procedure in section 252C.5(2) which directs that the court *shall* approve the administrative action "[u]nless defects appear on the face of the order or on the attachments." Such defects, the agency contends, clearly include failure to perfect service, noncompliance with the statute's notice requirements, or absence of required signatures. *See Danner v. Klosterbuer,* 434 N.W.2d 921, 922 (Iowa App.1988), *cert. denied,* 492 U.S. 907, 109 S.Ct. 3218, 106 L.Ed.2d 568 (1989) (quashing mandatory order for wage assignment based on procedural irregularities under companion chapter 252D). This emphasis on *process,* however, begs the question whether section 252C.5(2) purposefully limits the court's authority to review such orders for *substance.* The State argues persuasively that it does not.

Our Constitution plainly limits encroachment by one branch of our tripartite government over another:

> The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

Iowa Const. art. III, § 1. For the judiciary to play an undiminished role in this constitutional scheme, "nothing must impede the immediate, necessary, efficient and basic functioning of the courts." *Webster County Bd.*

*of Supervisors v. Flattery,* 268 N.W.2d 869, 873 (Iowa 1978). A court fulfills its most basic function when exercising its power to decide the merits of a controversy and render an enforceable judgment. *Cedar Rapids Human Rights Comm'n v. Cedar Rapids Community Sch. Dist.,* 222 N.W.2d 391, 395–96 (Iowa 1974). Reserved to us is the authority to check any legislative action encroaching on that power. *See Richardson v. Fitzgerald,* 132 Iowa 253, 255, 109 N.W. 866, 867 (1906) ("any direction by the Legislature that the judicial function will be performed in a particular way is a plain violation of the Constitution").

Equally fundamental to our tripartite structure, however, is the notion of shared governmental power and the need for harmonious cooperation among the coordinate branches. *Webster County,* 268 N.W.2d at 873. Nowhere is this principle more pertinently demonstrated than in the realm of child support collection and enforcement. *State ex rel. Keasling v. Keasling,* 442 N.W.2d 118, 121 (Iowa 1989).

The record before us reveals that the lawyer who attempted to secure court approval of the agency's order bears responsibility for such matters in thirty-eight central Iowa counties. Statewide, active cases within the child support recovery unit number 143,000. During the fiscal year ending July 1, 1995, use of chapter 252 administrative procedures resulted in the entry of over 3100 child support orders.

The sheer magnitude of the task confronting the agency in its enforcement efforts cannot, of course, justify unbridled departure from constitutional norms respecting the autonomy of individual branches of government. But we have recognized the need to view the separation of powers doctrine with some pragmatism when it comes to child support collection:

> In cases where activities of coordinate branches of government rub shoulder-to-shoulder, as they do in child support cases, we must view the concept of separation of powers with a certain amount of pragmatism and cooperation. In areas of concern mutual to separate branches of government, the boundaries of respective authori-

ty are not always clearly circumscribed. In those cases, it is permissible, often even desirable, to view the constitutional allocation of authority with an eye toward the common goal.

*Keasling,* 442 N.W.2d at 121.

The common goal evident in section 252C.5(2) is an intergovernmental sharing of a tremendous administrative burden, not an unconstitutional encroachment by the executive branch on the judiciary. Nowhere in the agency's argument, either before the district court or on appeal, do we discern an attempt to wrest substantive decision making power from the court. To the contrary, the agency concedes the court's inherent discretionary authority to review any order presented under section 252C.5(2) for substantive, as well as procedural, irregularity, and to set the matter for hearing where necessary. Viewed in this cooperative light, the statute poses no threat to the separation of powers doctrine. Accordingly, we reverse the judgment of the district court and remand the case for further proceedings.

**REVERSED AND REMANDED.**