No. 98-324

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 241

CAMILLE E. SEUBERT,

Petitioner,

v.

RUSSELL M. SEUBERT,

Respondent,

and

MONTANA NINTH JUDICIAL DISTRICT COURT,

Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Toole,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lonnie J. Olson, Child Support Enforcement Division, Montana

Department of Public Health and Human Services, Helena, Montana

For Respondent:

Hon. Marc G. Buyske, District Judge, Montana Ninth Judicial District,

Shelby, Montana

For Amici:

Barbara Bell, Attorney at Law, Great Falls, Montana (Russell M. Seubert)

Camille Seubert, Pro Se, Shelby, Montana

Argued and Submitted: July 8, 1999
Decided: August 31, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 Russell Seubert filed a petition for dissolution in the District Court for the Ninth Judicial District in Toole County. During that proceeding, the District Court issued a child support order which required that Russell pay child support. Camille Seubert subsequently requested a modification of the child support order from the Child Support Enforcement Division (CSED). CSED filed a Notice of Registration with the District Court, notifying the District Court of the possibility that CSED would modify the support order. The District Court ordered CSED to cease and desist from further proceeding in the matter, and further ordered CSED to appear and show cause why CSED's authority to modify district court child support orders should not be permanently enjoined as a violation of the separation of powers provision of Montana's Constitution. Following a hearing to consider the issue, the District Court issued an order permanently enjoining CSED from modifying any child support order issued by a district court. CSED appeals the District Court's order. We affirm the order of the District Court.

¶2 The following issues are presented on appeal:

¶3 1. Does this case present a justiciable controversy?

¶4 2. Did the District Court have personal jurisdiction over CSED?

¶5 3. Do §§ 40-5-272 and -273, MCA (1997), to the extent that they authorize agency modification of a district court child support order, violate the separation of powers clause of the Montana Constitution?

## FACTUAL BACKGROUND

¶6 On October 31, 1994, Russell Seubert filed a petition for dissolution. On October 23, 1995, Russell and Camille reached a custody, support, and property settlement agreement which provided that Russell would pay $828 per month for support of the couple's four children. Subsequently, Camille requested that the District Court find the settlement agreement unconscionable based upon her assertion that Russell's actual income was substantially more than the amount represented to her at the time of settlement negotiations. On April 4, 1996, the District Court entered its findings of fact, conclusions of law, order and judgment dissolving the marriage. The District Court also concluded that the parties' settlement agreement was conscionable and adopted the provisions of the agreement which established Russell's child support obligations.

¶7 Camille appealed the District Court's determination that the settlement agreement was conscionable to this Court. On November 14, 1996, in a noncite opinion, *In re Marriage of Seubert,* we affirmed the District Court's determination that the agreement was conscionable. On May 12, 1997, Camille filed a motion with the District Court for modification of the child support order. Camille argued that because Russell's represented income, at the time the parties agreed to the amount of child support, was less than Russell's actual income, there were substantially changed circumstances which justified a modification of the child support order.

¶8 On October 1, 1997, following a hearing, the District Court denied Camille's motion to modify the child support order. The District Court concluded that because nothing in the record explained how the parties calculated the amount of child support agreed upon, the only way to determine if substantially changed circumstances exist would be to calculate, using the child support guidelines, the difference between the current child support and the amount that would be due based on the guidelines and Russell's current income. Because the difference was $242 per month, the District Court concluded that there was not a sufficient change in circumstance to support modification.

¶9 On February 18, 1998, CSED filed with the District Court its Notice of Registration for Modification of Support Order, regarding the Seuberts' child support order. On March 2, 1998, the District Court temporarily ordered CSED to cease and desist from modifying the District Court's child support order, and further ordered CSED to appear and show cause why it should not be permanently ordered to cease and desist from reviewing and modifying any district court child support order. On March 17, 1998, CSED filed a motion to dismiss the District Court's orders to show cause and to cease and desist for failure of the District Court to have personal jurisdiction over CSED. On March 25, 1998, the District Court caused the order to show cause and to cease and desist to be personally served upon the Attorney General and the Administrator of CSED. The District Court held a hearing to consider its order to show cause and to cease and desist at which CSED appeared and argued while still reserving its challenge to the District Court's personal jurisdiction.

¶10 On May 1, 1998, the District Court entered its final Order enjoining CSED from modifying any child support orders issued by a Montana district court. The District Court concluded that CSED's action of modifying a district court's child support order "is a usurpation of the authority vested in Montana district courts and the Montana Supreme Court, and therefore, constitutes a violation of Article III, Section 1, *Separation of Powers,* 1972 Montana Constitution."

¶11 On May 29, 1998, CSED filed its notice of appeal. On June 3, 1998, the District Court ordered the execution of its final order stayed for 30 days, pursuant to Rule 7(a) of the Montana Rules of Appellate Procedure. On June 23, 1998, we ordered the District Court's order and injunction stayed pending appeal and further order of this Court.

## STANDARD OF REVIEW

¶12 Our standard of review of a trial court's conclusions of law is whether the lower court's interpretation of the law is correct. *Francetich v. State Comp. Mut. Ins. Fund* (1992), 252 Mont. 215, 218, 827 P.2d 1279, 1281. When the constitutionality of a statute is challenged, we begin with the presumption that the statute is constitutional, and the party attacking it has the burden of proving it unconstitutional. *Francetich*, 252 Mont. at 218-19, 827 P.2d at 1282.

## DISCUSSION

# ISSUE 1

¶13 Does this case present a justiciable controversy?

¶14 CSED contends that this case does not present a justiciable controversy within the meaning of Article VII, Section 4 of the Montana Constitution and therefore the District Court was without subject matter jurisdiction to decide this issue. CSED asserts that there is no justiciable controversy in this case, primarily because neither Russell nor Camille have challenged the constitutionality of the statutes in question. Additionally, CSED argues that "the determination of the constitutional question is not necessary to protect the rights of an actual claimant."

¶15 The District Court contends that a justiciable controversy was created when CSED filed with the District Court its Notice of Registration advising the District Court of the possibility it would modify the District Court's order. The District Court argues that because the relevant statutory scheme gave CSED the authority to modify the District Court's child support order, and because the District Court retained continuing equitable jurisdiction over this matter, a case in controversy was created and the District Court had inherent authority to react *sua sponte*.

¶16 Article VII, Section 4 of the Montana Constitution provides, in relevant part:

> The district court has original jurisdiction in all criminal cases amounting to felony and all civil matters and *cases at law and in equity*.

(Emphasis added.)

¶17 The constitutional provision in Article VII, Section 4 of the Montana Constitution which extends original jurisdiction of a district court to "cases at law and in equity," has been interpreted as embodying the same limitations as those imposed on federal courts by the Article 3, "case or controversy" provision of the United States Constitution. *See Olson v. Department of Revenue* (1986), 223 Mont. 464, 470, 726 P.2d 1162, 1166.

¶18 In *Chovanak v. Matthews* (1948), 120 Mont. 520, 525-26, 188 P.2d 582, 584-85, we stated:

> By "cases" and "controversies" within the judicial power to determine, is meant real controversies and not abstract differences of opinion or moot questions. Neither

[the] federal nor [our] state Constitution has granted such power.

The United States Supreme Court has in many cases held that a "controversy," in the constitutional sense, must be "one that is appropriate for judicial determination", be definite and concrete, *touching legal relations of parties having adverse legal interests*, and a real and substantial controversy, admitting of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition.

(Citations omitted.)

¶19 In *Marbut v. Secretary of State* (1988), 231 Mont. 131, 135, 752 P.2d 148, 150, we further defined the boundaries of a justiciable controversy:

The courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, declare social status, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions.

¶20 In *Gryczan v. State* (1997), 283 Mont. 433, 442, 942 P.2d 112, 117, we set forth the following criteria:

The test of whether a justiciable controversy exists is: (1) that the parties have existing and genuine, as distinguished from theoretical, rights or interests; (2) the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion; and (3) the controversy must be one the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities, be of such overriding public moment as to constitute the legal equivalent of all of them.

¶21 This matter began as a dissolution between Camille and Russell Seubert. A dissolution of marriage proceeding is a proceeding in a court of equity. *See Libra v. Libra* (1971), 157 Mont. 252, 256, 484 P.2d 748, 751. Article VII, Section 4 of the Montana Constitution grants original jurisdiction to district courts in all civil matters in equity. As part of the

dissolution, the District Court ordered that Russell pay monthly child support in a specific amount. It is well established that once the original, equitable jurisdiction of a District Court to determine child support in a dissolution proceeding is invoked, the District Court retains continuing jurisdiction, following entry of the child support order. *See Marriage of Harper* (1988), 235 Mont. 41, 47, 764 P.2d 1283, 1286-87; § 40-5-149, MCA.

¶22 The District Court contends that when CSED filed its Notice of Registration with the District Court and intervened in a matter in which the District Court had continuing jurisdiction, it created a real controversy with regard to CSED's statutory authority to modify the District Court's child support order, and implicated the separation of powers doctrine. The District Court asserts that CSED's interest in modifying the child support order was adverse to Russell's interest in the amount of child support already established. Moreover, the District Court contends that it deemed CSED's authority to modify its order, an intrusion into the District Court's jurisdiction and thereby a violation of the separation of powers doctrine.

¶23 As a result, the District Court argues that it properly used its inherent authority to protect both its continuing jurisdiction and Russell Seubert's right to not be adversely affected by an act of CSED which the District Court deemed unconstitutional. In *Monaco v. Lake County*, 1998 MT 243, ¶ 13, 291 Mont. 141, ¶ 13, 967 P.2d 367, ¶ 13, we addressed the issue of a court's inherent power:

> [T]he idea of inherent power implies that its use is for occasions not provided for by established methods. The Court [in *State v. Sullivan* (1913), 48 Mont. 320, 137 P. 392] held that when such methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not till then does occasion arise for the exercise of the inherent power.

¶24 We conclude that this case presents a real controversy between two adverse parties, CSED and Russell Seubert. We further conclude that the District Court properly invoked its right to use its inherent power to aid in the exercise of its jurisdiction and to protect the adverse interests of Russell Seubert. Therefore, we conclude that this case meets the requirements for a justiciable controversy.

ISSUE 2

¶25 Did the District Court have personal jurisdiction over CSED?

¶26 CSED contends that because acquisition of jurisdiction can only be accomplished by compliance with Rule 4B, M.R.Civ.P., which requires service of process, or a voluntary appearance, the District Court lacked personal jurisdiction over CSED. CSED asserts that it was not served with process, and argues that its Notice of Registration with the District Court was merely informational, and did not constitute a voluntary appearance within the meaning of Rule 4B, M.R.Civ.P.

¶27 The District Court asserts that it properly exercised personal jurisdiction over CSED, because CSED by its Notice of Registration filed with the court, attached itself to an ongoing matter before the District Court. Additionally, the District Court contends that CSED was served with a Notice to Appear which satisfied the requirement of service of process pursuant to Rule 4B, M.R.Civ.P.

¶28 Rule 4B(2) of the Montana Rules of Civil Procedure provides:

> Acquisition of jurisdiction. Jurisdiction may be acquired by our courts over any person *through service of process as herein provided; or by the voluntary appearance in an action* by any person either personally, or through an attorney, or through any other authorized officer, agent or employee.

(Emphasis added.)

¶29 On February 18, 1998, CSED filed a document entitled "Notice of Registration for Modification of Support Order" with the District Court. The Notice stated as follows:

> **Please take notice that the support order described below has been registered with the Child Support Enforcement Division Support (CSED) Order Registry on February 13, 1998:**
>
> Cause No. DR 94 013 PETITION FOR DISSOLUTION IN RE THE MARRIAGE OF RUSSELL M. SEUBERT, Petitioner, and CAMILLE E. SEUBERT, Respondent . . . .
>
> This order is registered under the authority of Montana Code Annotated § 40-5-271 (2). A registered support order is subject to modification under MCA §§ 40-5-272 and 40-5-273 . . . .

¶30 At the time CSED filed its Notice of Registration, the District Court retained continuing jurisdiction over the child support matter. CSED's Notice was not merely informational, as CSED contends. CSED's Notice served to interject CSED into an ongoing matter by invoking CSED's statutory authority, as set forth in § 40-5-273, MCA (1997), to modify the child support order in the matter of *In Re the Marriage of Russell M. Seubert*. We conclude that CSED's action constituted a voluntary appearance in this case, as contemplated by Rule 4B, M.R.Civ.P., and therefore the District Court properly acquired personal jurisdiction over CSED.

ISSUE 3

¶31 Do §§ 40-5-272 and -273, MCA (1997), to the extent that they authorize agency modification of a district court child support order, violate the separation of powers clause of the Montana Constitution?

¶32 CSED contends that §§ 40-5-272 and -273, MCA (1997), do not violate the separation of powers clause because the statutory scheme is merely a quasi-judicial function and does not threaten the institutional integrity of the judicial branch. CSED asserts that the statutes in question are a reasonable response to both the federal law requirements for expedited child support modification and the sheer magnitude of child support collection in Montana. CSED identifies the following factors as evidence of the statutory scheme's constitutionality: CSED is only empowered to modify a support order if the facts have changed; every contested modification is subject to a hearing before an administrative law judge; all modifications are subject to judicial review; and the legislature's grant of jurisdictional authority to CSED is not exclusive.

¶33 The District Court contends that the statutes in question violate the separation of powers doctrine of the Montana Constitution by giving CSED "judicial power" which is expressly reserved to the judiciary by the constitution. The District Court argues that because "judicial power" includes the authority to make binding orders and to carry them into effect, CSED's statutory authority to modify a child support order, file it with the district court, and then enforce the order as a district court judgment, violates the constitution. Furthermore, the District Court asserts that the procedure for judicial review does not cure the statutory scheme of its constitutional infirmity, because the judicial review is not automatic and the scope of review is limited by the Montana Administrative Procedure Act (MAPA) §§ 2-4-701 et seq., MCA.

¶34 Article III, Section 1 of the Montana Constitution provides:

> **Separation of powers. The power of the government of this state is divided into three distinct branches--legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.**

> It has been said that the principle of separation of powers is fundamental to the existence of a constitutional government. *See State ex rel. Fletcher v. District Court of the Nineteenth Jud. Dist.* (1993), 260 Mont. 410, 859 P.2d 992. At the same time, we recognize that the separation of our government into three great departments does not mean that there shall be no common link of connection or dependence, rather it means that the powers properly belonging to one department shall not be exercised by either of the other departments.

¶35 Article VII, Section 1 of the Montana Constitution provides:

> **Judicial power. The judicial power of the state is vested in one supreme court, district courts, justice courts, and such other courts as may be provided by law.**

> "Judicial power is the authority not only to decide, but to make binding orders or judgments." *State ex rel. Bennett v. Bonner* (1950), 123 Mont. 414, 425, 214 P.2d 747, 753. In *Shea v. North-Butte Mining Co.* (1919), 55 Mont. 522, 537, 179 P. 499, 504, we stated that "the expression 'judicial power' means the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." In *Linder v. Smith* (1981), 193 Mont. 20, 33, 629 P.2d 1187, 1194, we stated that based on the definition of "judicial power" as set forth in *Shea*, we have "upheld other administrative bodies against [a separation of powers] challenge, where those bodies are unable to render enforceable judgments."

¶36 The statutes in question, §§ 40-5-272 and - 273, MCA (1997), allow CSED to review and modify child support orders. The statutes provide, in relevant part:

> **40-5-272. Application for review of child support orders. (1) Upon the application of the department, the obligor, or the obligee, a hearings officer appointed pursuant to 40-5-273 shall review support orders filed with the support order registry. The purpose of the**

**review is to determine whether the support order should be modified in accordance with the guidelines.**

(2) Jurisdiction to conduct the review and to issue a modifying order under 40-5-273 is authorized when:

(a) the obligor and the obligee reside in this state; or

(b) jurisdiction can be obtained as provided under 40-5-231.

. . .

**40-5-273. Administrative review of child support orders - modifying orders. (1) A review application setting forth facts meeting any of the criteria for review of a child support order established in 40-5-272 must be scheduled for an administrative review. Unless the department determines under rules of the department that an in-person review is necessary, the review must be conducted by teleconferencing methods.**

. . . .

(6)(a) In addition to the powers and duties provided by other law, the department shall, to ensure the equitable determination of a support obligation, during a review:

(i) question witnesses in a nonadversarial manner to elicit full disclosure of all pertinent facts;

(ii) introduce evidence on behalf of the parties;

(iii) apply the guidelines to the facts elicited from the review; and

(iv) inquire as to any circumstances that may require variance from the guidelines.

. . . .

(7) The department shall determine a support obligation in accordance with the guidelines and shall issue a modifying order.

. . . .

(10) An order entered under this section by the department is a final agency decision, subject to judicial review pursuant to the Montana Administrative Procedure Act, except as provided in 40-5-253.

¶37 Additionally, § 40-5-227, MCA (1997), provides the following:

**40-5-227. Filing and docketing of final orders - order effective as district court decrees. (1) An abstract of any final administrative order under this chapter may be filed in the office of the clerk of the district court of any county of Montana. Upon the request of the department, the order must be docketed in the judgment docket of the district court. The properly filed and docketed order has all the force, effect, and attributes of a docketed order or decree of the district court, including but not limited to lien effect and enforceability by supplemental proceedings, writs of execution, and contempt of court proceedings. A final administrative order of the department is effective and enforceable without filing and docketing the order in the district court . . . .**

. . . .

(3) The department may issue a warrant for distraint based upon a properly filed and docketed order pursuant to 40-5-247.

¶38 A review of this statutory scheme demonstrates that CSED is clearly authorized to initiate a modification proceeding, modify a district court's child support order, and then enforce that modified support order in the same manner as a district court.

¶39 CSED argues that these functions are merely quasi-judicial and therefore do not violate the separation of powers clause. CSED points to the facts that CSED may review a child support order only to review the facts underlying the order, and may modify only if the facts upon which the order was based have changed substantially. CSED argues that its functions are not judicial because it does not determine the law, and it is required to apply the child support guidelines. Furthermore, CSED contends that the absolute right to judicial review of any contested order, pursuant to § 40-5-273(10), MCA (1997), is a recognition of the constitutional limitations on the exercise of CSED's quasi-judicial power.

¶40 In support of its position, CSED relies on two similar decisions from the states of Missouri and Iowa, in which each state's supreme courts upheld similar administrative review of child support orders. In *Chastain v. Chastain* (Mo. 1996), 932 S.W. 2d 396, the

Missouri Supreme Court was asked to decide the constitutionality of a statute which placed authority with the Missouri Division of Child Support Enforcement to modify judicial support orders. CSED cites to the following passage from *Chastain*:

> [S]ection 454.496 does not permit the Division to review the trial court's order. Instead, the statute permits the Division to initiate the process that results in modification of the original child support order only if there is a material change in the factual circumstances that formed the basis for the trial court's order. The Division considers a claim that circumstances have changed and that these new facts remove the current level of child support from conformity with Rule 88.01. *This is not judicial review. It is an initial assessment of the current compliance of the child support payment levels with Rule 88.01.*

*Chastain, 932 S.W.2d at 399 (emphasis added).*

¶41 However, there is an important distinction between the Montana and Missouri administrative processes. In Missouri, the modified child support order is not effective without judicial approval. The Missouri Court noted:

> [T]he statute offers the Division no authority to enforce its judgment. Section 454.496.6 expressly states that any orders issued by the Division are not effective unless the orders are approved by the judicial department.

*Chastain, 932 S.W.2d at 399 (emphasis added).*

¶42 In Montana, a modified child support order is subject to limited judicial review pursuant to MAPA. *See* § 2-4-704, MCA. However, unless a party appeals, it is an effective order. *See* § 40-5-273, MCA. Furthermore, the scope of the District Court's review pursuant to MAPA is limited. *See* § 2-4-704, MCA.

¶43 In *State of Iowa, ex rel. Sara Allee v. Gocha* (Iowa 1996), 555 N.W.2d 683, the Iowa Supreme Court upheld the constitutionality of that state's statutory scheme authorizing the Iowa Department of Human Services to modify and prepare child support orders. The relevant Iowa statute at issue provides:

> The administrator's order shall be presented, ex parte, *to the district court for review and approval*. Unless defects appear on the face of the order or on the attachments,

the district court shall approve the order. The approved order shall have all the force, effect, and attributes of a docketed order or decree of the district court.

*State of Iowa, ex rel. Sara Allee, 555 N.W.2d at 684 (emphasis added). In upholding the constitutionality of the statute against an alleged violation of the separation of powers doctrine, the Iowa Supreme Court stated:*

[T]he agency concedes that the court's inherent discretionary authority to review any order presented under section 252C.5(2) for substantive, as well as procedural, irregularity, and to set the matter for hearing where necessary. *Viewed in this cooperative light, the statute poses no threat to the separation of powers doctrine.*

*State of Iowa, ex rel. Sara Allee, 555 N.W.2d at 686 (emphasis added).*

¶44 In response, the District Court argues that the judicial review provided for in the Iowa and Missouri cases is substantially different from the judicial review provided for in Montana, and that it is that distinction which forms the line between an unconstitutional violation of the separation of powers and a constitutional delegation of a quasi-judicial authority. The District Court has correctly noted the critical difference which makes the authorities relied on by CSED unpersuasive.

¶45 In Missouri and Iowa, judicial review is an automatic and mandatory process which takes place before an agency's modification of a child support order may become effective. To the contrary in Montana, CSED's modification is effective prior to any judicial review. Should an obligor or obligee believe CSED's modification to be erroneous, they may petition for judicial review of that decision and such a petition is deemed a new proceeding, which requires a new filing fee. Moreover, the judicial review is limited by MAPA, which provides that, with regard to the factual record, the reviewing court may not substitute its judgment for that of the agency. *See* § 2-4-704, MCA. Additionally, MAPA provides that the reviewing court may only reverse an agency's decision if that decision is arbitrary and capricious, or is characterized by an abuse of discretion. *See* § 2-4-704, MCA.

¶46 CSED's final argument is that this statutory scheme is a reasonable response to the requirements of federal law and the sheer magnitude of child support collection. CSED points out that the statutes in question were enacted specifically to respond to the requirements of 42 U.S.C. § 666(a)(10) and 45 CFR 303.8, which require an expedited process to modify child support orders, and mandate that a modification must be wholly

completed within a 180-day time period. CSED asserts that should Montana fail to provide such expedited methods, the state may potentially be subject to a loss of federal funds.

¶47 While we appreciate the magnitude of the task confronting CSED in its modification and enforcement efforts, we agree with the following observation by the Iowa Supreme Court:

The sheer magnitude of the task confronting the agency in its enforcement efforts *cannot, of course, justify unbridled departure from constitutional norms respecting the autonomy of individual branches of government.*

*State of Iowa, ex rel. Sara Allee, 555 N.W.2d at 685 (emphasis added).*

¶48 Accordingly, we conclude that §§ 40-5-272 and -273, MCA (1997), to the extent that they grant CSED the "judicial power" to make and enforce binding child support orders without automatic and mandatory judicial review, are an unconstitutional violation of the separation of powers clause of the Montana Constitution.

¶49 The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ DOROTHY McCARTER

District Judge, sitting for Justice William E. Hunt., Sr.

Justice Karla M. Gray, dissenting.

¶50 I respectfully dissent from the Court's decision on issue one that the matter before the District Court constituted a justiciable controversy. I would conclude that no justiciable controversy existed and, as a result, that the District Court did not have subject matter jurisdiction. Consequently, I would reverse the District Court on the first issue and not reach the other issues raised.

¶51 Looking carefully at the cases cited by the Court for the elements and considerations in determining the existence of a justiciable controversy, it is clear to me that those elements and considerations are not met here. Indeed, the same is true of the cases the Court relies on for the "inherent authority" aspect of its decision on the existence of a justiciable controversy.

¶52 *Chovanak*, 120 Mont. at 525-26, 188 P.2d at 584-85, for example, speaks to a controversy "touching legal relations of *parties having adverse legal interests . . . .*" Similarly, *Gryczan*, 283 Mont. at 442, 942 P.2d at 117, requires that the "parties" have existing and genuine rights or interests. In my view, the corollary to these considerations is that a "party" with an adverse legal interest and/or genuine rights or interests must herself or himself bring a matter before a court before a justiciable controversy can be said to exist. Here, while Camille and Russell Seubert were parties to the dissolution and child support proceedings over which the District Court had continuing jurisdiction, neither of them was involved in any way in the District Court's actions involving the CSED in this matter. Russell Seubert, whose interests were adverse to the CSED's authority to modify, could have raised the issue in the modification proceedings and later sought judicial review. But nothing in the considerations involving the existence of a justiciable controversy even suggests that a sitting judge properly can "create" a justiciable controversy *sua sponte* when the actual parties to an underlying case have not done so.

¶53 Nor do I believe, as the Court states, that CSED's mere filing of the Notice of Registration "created a real controversy with regard to CSED's statutory authority to modify the District Court's child support order, and implicated the separation of powers doctrine" in a manner enabling the court to intervene. There is no question here about the CSED's statutory authority to modify; the Legislature clearly provided that authority. And while many statutes may arguably "implicate" questions involving the constitutional separation of powers, it is my view that courts may not raise such matters *sua sponte*, but must await the issue being raised by a party before a justiciable controversy exists. Otherwise, we end up with judges acting on their own in looking for such a constitutional issue in any number of statutory enactments, raising the issue, and proceeding to resolve

it. I do not believe such actions comport with the constitutional separation of powers which is the fundamental underpinning of our governmental structure.

¶54 Moreover, nothing in the inherent authority cases cited by the Court supports the exercise of such authority by the District Court here. As stated in *Monaco*, ¶ 13, the idea of a court's inherent power implies that its use is limited to occasions not provided for by established methods, on the failure of such methods, or when an emergency arises which the established methods cannot or do not meet. None of those circumstances exists here. As mentioned above, Russell Seubert could have raised the separation of powers issue during the administrative proceedings and ultimately had it resolved by the District Court in the ordinary course of events. Thus, an established method existed for addressing the question, the method had not failed and no emergency had arisen.

¶55 Finally, I am in some ways most troubled by the Court's statements that it was appropriate for the District Court to act to protect Russell Seubert's adverse interests. I agree that CSED's filing of the Notice of Registration was adverse to his interests. How that can properly translate into a conclusion that it is in any way appropriate for a court to intrude into a matter to protect a *party's* interests remains unexplained. Indeed, in my view, such a notion is the antithesis of what judging is about. In our system of justice, the parties are the adversaries and the judge is the neutral arbiter of the law. In addition, it is relatively clear in this case that the District Court had largely resolved the separation of powers question it raised before hearing any arguments on the issue; how a party--whether a state agency or a private individual--could ever have been said to have its "day in court" under such circumstances is hard to imagine.

¶56 According to the Court, a justiciable controversy existed here by virtue of the District Court acting *sua sponte* to "create" such a controversy to "protect" the interests of a party who did not act to protect his own interests. I cannot agree. I dissent.

/S/ KARLA M. GRAY